UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 24-10090-WGY |
| | ) | |
| JASON HUNTER, | ) | |
| | ) | |
| Defendant | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through Assistant United States Attorney Alathea E. Porter, hereby respectfully submits this sentencing memorandum in connection with the sentencing of defendant Jason Hunter (hereinafter, the "Defendant"). On May 1, 2025, the Defendant pled guilty to Counts One, Two, and Four of the Indictment charging him with conspiracy to distribute and to possess with intent to controlled substances, in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count One); possession with intent to distribute 500 grams or more of a mixture and substance containing methamphetamine, 500 grams or more of cocaine, and other controlled substances, and aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii), 841(b)(1)(B)(ii), and 18 U.S.C. § 2 (Count Two); and money laundering conspiracy, in violation of 18 U.S.C. § 1956(h) (Count Four). There is a binding plea agreement in this case pursuant to Fed. R. Crim. P. 11(c)(1)(C).

Consistent with the plea agreement, for the reasons stated herein and as will be addressed at the sentencing hearing, the government recommends that the Court sentence the Defendant to 198 months of imprisonment, followed by 60 months of supervised release, and $300 in mandatory special assessments.

## Factual Background

The background of the case is set forth in detail in the final Pre-Sentence Report ("PSR")

1

prepared by the United States Probation Office ("Probation") and is therefore not restated herein. PSR, ¶¶ 9-27. The Defendant was engaged in large-scale multi-drug trafficking, as well as in the laundering of those drug proceeds. Over the course of the investigation, the Defendant was responsible for participating in the laundering of at least $425,000 in drug proceeds. On the day of the Defendant's arrest in this case, agents seized a total of over 16 kilograms of methamphetamine pills, over 1.6 kilograms of cocaine, 1 kilogram of mushrooms, 50 kilograms of marijuana, over 52 grams of oxycodone pills, over 22 grams of pills containing fentanyl, ecstasy, and large quantities of assorted THC products from the Defendant's home and car. PSR, ¶¶ 13-23; 27. That same day, and just prior to the Defendant's arrest, agents seized over 4.4 kilograms of methamphetamine pills and 1.7 kilograms of marijuana from co-defendant Walter Norton, immediately after Norton had obtained those drugs from the Defendant. PSR, ¶¶ 24-26.

## Sentencing Guidelines

Probation determined that the Defendant's total offense level is 35. PSR, ¶ 43. The Defendant's base offense level is 36, because he is responsible for over 30,000 kilograms of converted drug weight. PSR, ¶ 34.

Pursuant to USSG § 2S1.1(b)(2)(B), Probation increased the Defendant's offense level by 2 because he was convicted under 18 U.S.C. § 1956. PSR, ¶ 35. Probation then reduced the Defendant's offense level by 3 levels, pursuant to USSG § 3E1.1(a) and § 3E1.1(b). As set forth in the plea agreement, the government agrees with these calculations.

Probation determined that the Defendant has 11 criminal history points, which places him in criminal history category V. PSR, ¶¶ 71-72. Based on a criminal history category V, and with a total offense level of 35, Probation calculated the advisory sentencing guideline range as 262-327 months. PSR, ¶ 116.

## Consideration of the Section 3553(a) Factors

Taking into account the Defendant's personal history and characteristics and considering the factors set forth in 18 U.S.C. § 3553(a), the government respectfully suggests that a sentence of 198 months is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a). That sentence accounts for the characteristics of the Defendant, the extremely serious nature of the offenses of conviction, the need to provide proper deterrence, to promote respect for the law, and provide adequate punishment for the offense.

### 1. Characteristics of the Defendant

The Defendant is a 49-year-old man with a lengthy criminal history. PSR, ¶¶ 45-70. Indeed, he has 26 criminal convictions most of which are too old to score. *Id.* Those convictions include prior drug trafficking convictions, as well as violent convictions such as assault and battery by dangerous weapon. PSR, ¶ 65. He also has an additional 14 arrests that did not result in convictions. PSR, ¶¶ 75-88.

According to the Defendant, as well as multiple others in his life who wrote letters of support, the Defendant had an extremely difficult childhood. PSR, ¶¶ 90-103; *see also* Dkt., 131, Defendant's Sentencing Memorandum and Letters of Support. The Defendant witnessed serious drug abuse from an early age, as well as the loss of his brother to a drug overdose, which sadly did not deter him from his own substance abuse and trafficking in such deadly substances. PSR, ¶¶ 90-91; 93-94; 107-108.

In light of this very difficult childhood, as well as his own substance abuse issues, the government is recommending a sentence that is significantly below the low-end of the guideline sentencing range.

2.  **Nature of the Offense**

The Defendant is responsible for participating in the laundering of approximately $425,000 in drug proceeds.  He played an important role in the money laundering conspiracy, specifically, by delivering the cash drug proceeds to the individuals who subsequently took additional steps to conceal the nature of the funds and launder the drug proceeds.  The global drug trade cannot function without individuals like the Defendant who deliver the cash drug proceeds to the money launderers, who ultimately return the "cleaned" money back to the drug traffickers.  The delivery of the drug proceeds to money launderers is the first step (and a critical step) in the laundering process.

The Defendant is also responsible for significant amounts of methamphetamine, cocaine, fentanyl, and other controlled substances that he had stockpiled for distribution.  These substances, particularly methamphetamine and fentanyl, are wreaking havoc on our society.

A.  **Methamphetamine**

Methamphetamine is a deadly and highly addictive drug that is an increasingly serious problem throughout the United States and in the District of Massachusetts.[1]  The proportion of federal drug trafficking cases involving methamphetamine has steadily increased over the past 20 years, accounting for 48.7% of all drug trafficking cases in 2022, and becoming the predominant drug trafficked over the last decade.[2]  Abuse of this potent stimulant is plaguing many parts of the

---

[1]  Martha Bebinger, *"Meth Use Is Rising In Boston, Intensifying The Opioid Crisis,"* appearing at https://www.wbur.org/news/2018/11/21/meth-worsening-opioid-epidemic (last accessed March 23, 2025).

[2]  United States Sentencing Commission, *Methamphetamine Trafficking Offenses in the Federal Criminal Justice System,* appearing at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2024/202406_Methamphetamine.pdf, at 16 (last viewed March 23, 2025) ("USSC 2024 Methamphetamine Trafficking Offenses").

country, and the government has seen a significant rise in the amount of methamphetamine in the District of Massachusetts over the course of the last several years.

Methamphetamine is second only to fentanyl in causing drug-related deaths in the United States.[3] The Centers for Disease Control and Prevention ("CDC") found that overdose deaths from psychostimulants, comprised mostly of methamphetamine, increased by 703% from 2011 to 2021.[4] Moreover, the Drug Enforcement Administration found that 31% of drug-related deaths in the United States are caused by psychostimulants – mostly methamphetamine.[5] Based on data available as of March 2, 2025, there were at least 29,278 recorded methamphetamine-related deaths nationwide for the prior 12-month period.[6]

In recent years, methamphetamine has become much more prevalent in the Northeast.[7] Most of the methamphetamine supply is produced in Mexico and transported to the United States.[8] That is because methamphetamine produced in Mexico presents a lower cost, higher purity, and higher potency alternative.[9] Due to its low costs of production and maintenance, combined with the expansion of Mexican drug cartels into major United States cities and their extensive drug

---

[3] Drug Enforcement Administration, *2024 National Drug Threat Assessment*, appearing at https://www.dea.gov/sites/default/files/2024-05/5.23.2024%20NDTA-updated.pdf, at 3 (last viewed March 23, 2025) ("DEA 2024 Assessment").

[4] USSC 2024 Methamphetamine Trafficking Offenses, at 6.

[5] DEA 2024 Assessment, at 6.

[6] National Center for Health Statistics, *National Vital Statistics System, Provisional Drug Overdose Death Counts,* appearing at https://www.cdc.gov/nchs/nvss/vsrr/drug-overdose-data.htm (last accessed March 24, 2025) (hereinafter, "2024 VSRR Overdose Death Counts").

[7] U.S. Department of Justice Drug Enforcement Administration, *2020 National Drug Threat Assessment*, available at https://www.dea.gov/sites/default/files/2021-02/DIR-008-21%202020%20National%20Drug%20Threat%20Assessment_WEB.pdf, at 23 (last accessed June 24, 2024) (hereinafter, "DEA 2020 Assessment"); Streck, Joanna M et al., *Injection of Methamphetamine Has Increased in Boston, Massachusetts: 5 Waves of Centers for Disease Control and Prevention State Surveillance Data*, 17.3 J. OF ADDICTION MEDICINE 349–352 (2023).

[8] DEA 2024 Assessment, at 31.

[9] *Id.*

distribution networks within local communities, methamphetamine remains in constant supply and is easily accessible.[10]   Purer, cheaper methamphetamine leads to more deaths.  The number of methamphetamine overdoses in Massachusetts alone increased threefold from 2018 to 2022 (growing from 70 deaths to 210).[11]   Between 2022 and 2023, the time period in which the Defendant was distributing large quantities of methamphetamine in the New England area, there were over 200 reported methamphetamine-related overdose deaths in Massachusetts, approximately 80 methamphetamine-related overdose deaths in Connecticut, and around 60 methamphetamine-related overdose deaths in Rhode Island.[12]   In fact, "[t]he rate of all drug-related E[mergency] D[epartment] visits was highe[r] among patients residing in the Northeast[ern United States] (2,531 per 100,000 [residents])" than any other region in the nation.[13]

Even when not lethal, the physical and emotional effects of methamphetamine abuse are dramatic.   Methamphetamine has a horrific impact on its users and on the community. Methamphetamine is a tremendously addictive drug, which can cause dramatic physical and emotional changes on those who use it, including increases in aggressive and violent behavior.[14] The physical effects on users are well-documented.   The emotional changes are equally devastating:

---

[10] *Id.* at 3-16.

[11] 2022 VSRR Overdose Death Counts.

[12] 2022-2023 VSRR Overdose Death Counts.

[13] Substance Abuse and Mental Health Services Administration, PEP22-07-03-002, *Findings from Drug-Related Emergency Department Visits, 2021*, https://store.samhsa.gov/sites/default/files/pep22-07-03-002.pdf (2022), at 9 (last accessed June 24, 2024).

[14] Mark A. R. Kleiman, Jonathan P. Caulkins, and Angela Hawken, *Drugs and Drug Policy: What Everyone Needs to Know* 120 (Oxford University Press 2011) ("There is . . . a much stronger association between violence and regular methamphetamine use.   Heavy use of methamphetamine increases the likelihood of attack behaviors and aggression, with the most compelling evidence coming from laboratory studies involving mice.").

> Chronic abusers may exhibit symptoms that can include significant anxiety, confusion, insomnia, mood disturbances, and violent behavior. They also may display a number of psychotic features, including paranoia, visual and auditory hallucinations, and delusions (for example, the sensation of insects creeping under the skin). Psychotic symptoms can sometimes last for months or years after a person has quit abusing methamphetamine, and stress has been shown to precipitate spontaneous recurrence of methamphetamine psychosis in formerly psychotic methamphetamine abusers.[15]

And, unlike opioid addiction, there are no approved drugs available for treatment of methamphetamine addiction.[16] Addicted users who choose to stop using methamphetamine may face withdrawal symptoms including severe depression, psychosis, and intense drug cravings.[17]

### B. Cocaine

Cocaine is "an intense, euphoria-producing drug with strong addictive potential."[18] The potent stimulant can have extremely damaging effects on users, including severe consequences such as "sudden cardiac arrest, convulsions, strokes, and death."[19] But cocaine affects more than just the user: it has been linked to "aggressive driving behavior and long-term developmental issues in babies when used during pregnancy."[20] In the United States, deaths related to cocaine

---

[15] National Institute on Drug Abuse, *What are the long-term effects of methamphetamine abuse,* April 7, 2017, appearing at https://www.drugabuse.gov/publications/research-reports/methamphetamine/what-are-long-term-effects-methamphetamine-abuse (last accessed June 24, 2024).

[16] Carmen Heredia Rodriguez, *"Meth's Resurgence Spotlights Lack of Meds To Combat the Addiction,"* Kaiser Health News, January 14, 2019, appearing at https://khn.org/news/meths-resurgence-spotlights-lack-of-meds-to-combat-the-addiction/ (last viewed March 24, 2025).

[17] National Institute on Drug Abuse, *Methamphetamine*, appearing at https://nida.nih.gov/research-topics/methamphetamine#long-term (last accessed March 24, 2025).

[18] U.S. Department of Justice Drug Enforcement Administration, *Drugs of Abuse, A DEA Resource Guide/ 2024 Edition* at 65, available at https://www.dea.gov/sites/default/files/2024-12/2024-Drugs-of-Abuse-508.pdf (last viewed September 17, 2025).

[19] *Id.* at 66.

[20] Genevieve Glatsky, *Cocaine is the Fastest-Growing Illegal Drug Worldwide. Here's Why.*, New York Times (Jun. 27, 2025), available at

"have increased every year since 2015, many driven by the fentanyl poisoning of cocaine users who did not know the cocaine was laced with fentanyl."[21]  In fact, "[c]ocaine users are at a greater risk for drug poisoning from accidental ingestion of fentanyl because they do not have the tolerance of a habitual opioid user."[22]  In 2023, there were 29,499 deaths from drug poisoning involving cocaine in the United States, an 85% increase since 2019.[23]

While cocaine trafficking and abuse is a global problem, it affects the people of Massachusetts more than most.  The Commonwealth confronts a severe substance abuse crisis, "with overdose deaths at 32.1 per 100,000 residents—55% above the national average."[24]  In 2023, cocaine was present in 54% of opioid related deaths in the state.[25]  For those that seek treatment for substance abuse before it is too late, costs are astronomical.  The average residential treatment costs $56,725 per individual, while outpatient treatment costs $1,703.[26]  For the 66,912 patients treated annually for drug rehabilitation in Massachusetts, that places an enormous burden on individuals, their families, the Commonwealth, and the Federal Government.[27]  To address this problem, the United States has spent a total of $200.6 million on substance abuse treatment

---

https://www.nytimes.com/2025/06/27/world/americas/cocaine-drug-market.html?unlocked_article_code=1.mU8.UL1f.X0NtJblJqqW-&smid=nytcore-ios-share&referringSource=articleShare (last viewed September 17, 2025).

[21] *Id.*

[22] *Id.*

[23] National Institute on Drug Abuse, *Drug Overdose Deaths: Facts and Figures*, available at

https://nida.nih.gov/research-topics/trends-statistics/overdose-death-rates#Fig8 (last visited September 17, 2025).

[24] Well-Being Foundation of Mental Health, *Statistical Data on Drugs in Massachusetts*, available at https://www.wfmh.org/stats/massachusetts-drug-alcohol-statistics#statistical-data-on-drugs-in-massachusetts (last visited September 18, 2025).

[25] *Id.*

[26] Drug Abuse Statistics, *Cost of Rehab*, available at https://drugabusestatistics.org/cost-of-rehab/ ((last visited September 18, 2025). Statistics for cocaine-specific substance abuse treatment are not available, so this number encompasses substance abuse generally.

[27] *Id.*

infrastructure in Massachusetts alone.[28]

Although Massachusetts is especially affected, cocaine use persists throughout the Northeast.  A recent study showed that 2.61% of Massachusetts residents used cocaine in 2020 or 2021 – the fifth highest share in the United States.[29]  Further opening the aperture reveals the regional nature of the cocaine use issue: Vermont had 2.99% (2nd nationally); Rhode Island had 2.67% (4th nationally); New York had 2.35% (8th nationally); Connecticut had 2.26% (9th nationally); Maine had 2.19% (12th nationally); Delaware had 2.18% (13th nationally).[30]

### C.  Fentanyl

The danger of fentanyl is well-documented.  *See, e.g., United States v. Simms*, No. 1:19-CR-423, 2019 WL 7049930, *6 (N.D. Ohio Dec. 23, 2019) ("The distribution of fentanyl, one of the most deadly illegal drugs on the black market, poses an incredible threat to community members."); *United States v. Brown,* No. 17-00219-02, 2017 WL 4883375, *3 (W.D. Penn. Oct. 30, 2017) ("The Court is mindful that the distribution of fentanyl, in particular, has recently resulted in serious harm to the community—with multiple reports of overdoses and deaths resulting from that particular drug being reported in the news.").  Fentanyl is an extremely potent synthetic opioid.[31]

This Court is well aware that fentanyl is a deadly drug that has wreaked havoc in the United

---

[28] *Id.*

[29] Preeti Vankar*, U.S. Adults Prior Cocaine Use in 2021 and 2022 by State* (July 1, 2024), available at https://www.statista.com/statistics/806271/past-year-cocaine-use-us-adults/ (last visited September 17, 2025).

[30] *Id.*

[31] U.S. Department of Justice Drug Enforcement Administration, *2020 National Drug Threat Assessment*, available at https://www.dea.gov/documents/2021/03/02/2020-national-drug-threat-assessment#:~:text=The%202020%20National%20Drug%20Threat%20Assessment%20%28ND TA%29%20is,laundering%20of%20proceeds%20generated%20through%20illicit%20drug%20s ales, at 7 (March 2021) (last visited March 24, 2025) (hereinafter, "DEA 2020 Assessment").

States, and more specifically in Massachusetts, over the past several years.  Fentanyl remains the primary driver behind the ongoing opioid crisis, with fentanyl involved in more overdose deaths than any other illicit drug.[32]  Indeed, "[n]early 70 percent of all drug overdose deaths in the United States in 2018 involved an opioid.  Deaths involving synthetic opioids other than methadone—the category which includes fentanyl—increased by 10 percent according to data provided by the Centers for Disease Control and Prevention (CDC)."[33]  "Fentanyl use and overdose deaths are more widespread across the country as the opioid crisis continues.  Overall, fentanyl-involved deaths are still the most concentrated in states in the Great Lakes and Northeast of the United States."[34]

The most recent data shows that for the first time since 2018, the United States has seen a decrease in overdose deaths, with the CDC reporting a 14.5% decrease between June 2023 and June 2024.[35]  Despite that decrease, which is likely a result of the expanded availability of Narcan, the numbers remain staggering: in 2023, more than 107,000 people lost their lives to a drug overdose, with nearly 70% of those deaths attributed to opioids such as fentanyl.[36]

To understand the scope of the fentanyl crisis, it is helpful to compare the overdose statistics to other death statistics.  In 2021, there were 106,700 overdose fatalities in the United States and 71,000 involved synthetic opioids, overwhelmingly fentanyl.[37]  In the same year, 43,600

---

[32] *Id.*, at 7.

[33] *Id.*

[34] *Id.* at 12.

[35] U.S. Department of Justice Drug Enforcement Administration, *Overdose Deaths Decline, Fentanyl Threat Looms,* https://www.dea.gov/press-releases/2024/12/16/overdose-deaths-decline-fentanyl-threat-looms (Dec. 16, 2024) (last visited March 24, 2025).

[36] *Id.*

[37] Tamara Kerrill Field, *The fentanyl epidemic is more than a crisis. It's a massacre.*, BOSTON GLOBE, https://www.bostonglobe.com/2023/02/24/metro/fentanyl-epidemic-is-more-than-crisis-its-massacre/ (Feb. 24. 2023 at 11:54 a.m.) (last visited March 24, 2025).

people died of breast cancer and about 43,000 died in traffic accidents.[38]  Put another way, almost twice as many people die in a year from fentanyl than from breast cancer or traffic accidents.  In fact, opioid overdoses are now the leading cause of death for Americans aged 18 to 45, with fentanyl being the most significant contributor.[39]

These statistics are not hypothetical: they describe the situation occurring right now in this district.  Behind each statistic is someone's mother, father, child, brother, sister, or friend.  The epidemic is real and being felt every day by families across Massachusetts.  The Defendant is acutely aware of the deadliness of fentanyl, as his own brother died of a fentanyl overdose.

### 3.  Need for the Sentence Imposed

As the discussion above regarding the nature of the offense makes clear, there is a compelling need to deter individuals who may be inclined to participate in drug trafficking — particularly substances as dangerous as fentanyl and methamphetamine.  A significant sentence of imprisonment is warranted to deter individuals from engaging in trafficking of these deadly and devastating drugs, as the dangers associated with that conduct cannot be overstated.  Individuals tempted to engage in drug trafficking must understand that *any* involvement with methamphetamine, cocaine, and fentanyl will have immediate and harsh consequences.  Imprisonment is necessary to send a strong warning to those who might otherwise consider involvement with these dangerous drugs that they must resist the temptation.

The Defendant has been engaged in criminal conduct his entire life, from adolescence through adulthood.  Yet despite the 26 convictions, and multiple terms of imprisonment, the Defendant has not been deterred.  A significant sentence is necessary to protect the community

---

[38] *Id.*

[39] *Id.*

from the Defendant, to deter him from continuing to engage in criminal activity, and to promote respect for the law.

The sentence recommended by the government also takes into consideration the need to avoid unwarranted sentencing disparities. The Defendant's co-defendant, Walter Norton, faces a mandatory minimum sentence of 180 months. Additionally, as set forth in the PSR, the average length of imprisonment for defendants with a total offense level of 35 and a criminal history category V was 206 months, with a median sentence of 210 months. As such, the sentence recommended by the government is appropriately aligned with sentences imposed on similar defendants, and it is consistent with the sentence likely to be imposed on the co-defendant in this case.

While the government believes a downward variance is warranted to reflect the history and characteristics of the Defendant, the sentence recommended by the Defendant would not adequately reflect the seriousness of the offense, it would not provide sufficient deterrence to the Defendant or others, it would fail to properly punish the Defendant, nor would it adequately promote respect for the law.

## **CONCLUSION**

For the reasons set forth herein, and as will be addressed at the sentencing hearing, the government recommends that the Court sentence the Defendant to 198 months in prison, followed by five years of supervised release, and $300 in mandatory special assessments.

Dated: September 19, 2025            Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:    */s/ Alathea E. Porter*
ALATHEA E. PORTER
Assistant U.S. Attorney

12

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this document filed under seal and provided via electronic mail to counsel for the Defendant and the United States Probation Office on September 19, 2025.

/s/ Alathea E. Porter
ALATHEA E. PORTER
Assistant U.S. Attorney